UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-390-JBC

DEBRA L. WREN,                                                                                                                  PLAINTIFF,

V.            **MEMORANDUM OPINION AND ORDER**

RODNEY RICHARDSON and
CITY OF RICHMOND, KENTUCKY,                                             DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motion for summary judgment (DE 15). The court, having reviewed the record and being sufficiently advised, will grant the motion.

**I. Factual Background**

The plaintiff, Debra L. Wren, brought this action against Rodney Richardson, in his individual and official capacities, and against the City of Richmond, for violations of 42 U.S.C. § 1983 and state laws. The plaintiff claims that the defendants violated her constitutional rights by unlawfully arresting her. Defendant Rodney Richardson is a detective for the City of Richmond Police Department. The plaintiff asserts that Detective Richardson acted negligently in connection with the plaintiff's arrest.

Detective Richardson investigated the alleged theft of Judy Clark's credit card. Clark reported to the police that her credit card was stolen and fraudulently used to make purchases at a convenience store. Detective Richardson investigated

this as a crime of forgery in the second degree based on the fraudulent use of a stolen credit card.  Initially, the Assistant Commonwealth Attorney gave Richardson a handwritten note that identified Clark's situation and included the following remark: "Left purse in office/Debra & China in office."  *See* handwritten note, attached as exhibit D to DE 15.  In the course of his investigation, Richardson interviewed Clark and she told him about the unusual circumstances involving Debora Wren and China Combs when her credit card was stolen.

At the time of the theft Clark worked for the Madison County Drug Court as a drug technician.  She performed drug and alcohol testing for the drug court participants.  On October 3, 2005, Clark's credit card company called to advise her of unusual charges on her account.  Clark knew that she had not used her credit card to purchase anything that day.  On the previous night, Clark was working until ten o'clock p.m.  She was getting ready to close and go home, so she got her purse out of a locked cabinet, and then China Combs and Debora Wren arrived for their testing at one minute before ten o'clock.  During the course of the testing, China's rapid, animated manner of talking distracted Clark. Looking back at the incident, Clark thought that was the moment when Wren took the credit card from her purse.  Clark kept a list at work of the drug court participants, and during her deposition she recalled that the name "Debra Wren" was on the list as having appeared at the drug court to be tested.  Clark's statement to her credit card company regarding the theft referenced "Debra Wren" and "China Combs" as the

people who allegedly stole her credit card.

Detective Richardson continued his investigation by visiting the convenience store where the credit card was used after it was stolen.  At the store he reviewed the surveillance video showing the fraudulent transaction.  Richardson recognized Combs on the video.  He later searched the police department's computer database for Debra Wren and found a booking photo, which he then compared with the images from the video and concluded that they appeared to show the same person.  Richardson found the booking photo using the department's program called "Mugshot Pro" which includes photographs of people arrested for shoplifting or for a felony.  The plaintiff, Debra Wren, had a photo in the program because she had been arrested and booked for theft by unlawful taking and shoplifting in 2002.  Based on all the information found during his investigation, Detective Richardson obtained a warrant for the arrest of Debra Wren.

The plaintiff, Debra L. Wren, was arrested on November 27, 2005, and was detained in the Madison County Detention Center until November 30, 2005.  She was arrested based on a warrant issued on November 27, 2005, and the warrant was based on an affidavit filed by Detective Richardson.  According to the plaintiff, the woman shown on the video was not the plaintiff, Debra L. Wren, but was her ex-sister-in-law, Debora K. Wren.

After the plaintiff was arrested she was represented by Lynda Campbell, a public defender in Madison County.  Campbell called Detective Richardson to tell

him that her client had informed her that there were two Debra/Debora Wrens in Richmond. Richardson invited Campbell to view the Redi Mart video at the Richmond Police Department so that she could see whether the police had arrested the correct Debra Wren. After viewing the video, Campbell stated that the police had arrested the wrong person.[1] They discussed what they could do to correct the situation and Richardson "immediately pulled out a cell phone" and called the county attorney to explain the situation. Depo. of Campbell, excerpt quoted in DE 15-3, at 10. Campbell spoke with the county attorney and then prepared an order to have the plaintiff released from jail that day.

## II. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-movant's case. *Id*. at 324-25. To survive summary judgment, the non-movant must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The non-movant must present more than a mere scintilla of evidence to defeat a motion for summary

---

[1] In her deposition, Campbell explained that "in my opinion I could see how [Richardson] thought he had the right Debra Wren, that the other Deborah [sic] Wren that I knew was also a white female around 5'5". I don't know weight, 150, but a similar weight, and that there was a similarity but that I firmly believe that the Debra Wren he had arrested was not the correct one." Depo. of Campbell, excerpt quoted in DE 15-3, at 10.

judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. P. 56(e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  Legal Analysis

The plaintiff asserts that her right to be free from unreasonable seizure was violated, thus creating a § 1983 action for a violation of her Fourth and Fourteenth Amendment rights. Additionally, the plaintiff claims that Detective Richardson acted negligently, recklessly or wantonly, within the course of his employment, or in the alternative, that he acted intentionally, in violating the plaintiff's rights. The plaintiff also alleges that the City of Richmond was deliberately indifferent in the training and supervision of its police officers.

### A.  Section 1983 Claims

Under 42 U.S.C. § 1983, an individual has a cause of action against any state actors who deprive them of their rights as secured by the United States Constitution. To demonstrate a § 1983 claim the plaintiff must first show that she was deprived of a specific constitutionally protected right. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). The Fourth Amendment, as incorporated against the states through the Fourteenth Amendment, guarantees the right to receive "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Id.* at 142-43 (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)).

5

"[T]he probable cause standard for pretrial detention is the same as that for arrest . . . ." *Id.* at 143.

If an arrest is supported by probable cause then it does not violate the plaintiff's Fourth Amendment right against unreasonable seizure. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). There is probable cause for an arrest if the facts and circumstances known to the officer at the time are sufficient to cause a reasonable person to believe that the suspect committed the crime. *Id.* at 37; *Crockett v. Cumberland College*, 316 F.3d 571, 579 (6th Cir. 2003). "The probability of criminal activity is assessed under a reasonableness standard based on an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest*." *Id.* at 580 (emphasis in original) (citations omitted).

In the present matter, the plaintiff was arrested pursuant to a facially valid warrant that was obtained based on the facts discovered through Detective Richardson's investigation. The victim, Judy Clark, provided Detective Richardson with the spelling of the suspect's name as "Debra Wren," and thus he obtained a warrant with that spelling. Clark's deposition testimony, including her testimony about the list of drug-court participants, and her written statement to her credit card company support that "Debra Wren" was involved in the alleged theft of Clark's credit card. The victim's identification of "Debra Wren" as the alleged thief was sufficient to establish probable cause for Richardson to obtain a warrant, especially when corroborated by Richardson's review of the plaintiff's booking

photo from Mugshot Pro and his perception that it was the same person who appeared in the surveillance video from Redi Mart. *See Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) ("A law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest.").

Viewing the evidence in the light most favorable to the plaintiff, the court finds that the warrant for Debra Wren's arrest was supported by probable cause. "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Id.* at 371 (citations omitted). Thus, the plaintiff's arrest and detention were also supported by probable cause. Therefore, the plaintiff's constitutional rights were not violated by the actions of the City of Richmond or Detective Richardson.[2]

1.  City of Richmond and Rodney Richardson in his official capacity

The plaintiff's claims against Detective Richardson in his official capacity are treated as claims against the City of Richmond. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A § 1983 claim against a municipality requires the court to address two steps: first, whether the "plaintiff's harm was caused by a violation"; and second, "if so, whether the city is responsible for that violation." *Collins v.*

---

[2] The fact that the plaintiff was innocent of the crime is "largely irrelevant" to her § 1983 claim. *Baker*, 443 U.S. at 145. "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Id.* at 143.

*City of Harker Heights*, 503 U.S. 115, 120 (1992); *see also Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (holding that a plaintiff "may only hold a local government entity liable under § 1983 for the entity's own wrongdoing"). If there was not a constitutional violation then the plaintiff does not have a claim under § 1983. If there was a violation then the city is liable under § 1983 only if its policies were "the 'moving force behind the constitutional violation.'" *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989) (quoting, inter alia, *Monell*, 436 U.S. at 694 (1978)); *see Gregory*, 444 F.3d at 752 ("A local government entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights.").

As addressed above, the defendants did not violate the plaintiff's constitutional rights because the warrant and arrest were supported by probable cause. However, even if a constitutional violation occurred, the plaintiff's § 1983 claim fails the second step of the analysis because the city did not act with deliberate indifference to the plaintiff's rights.

A city can be liable if it systematically fails "to train police officers adequately as custom or policy." *Gregory*, 444 F.3d at 753 (citing *City of Canton*, 489 U.S. at 388-89). However, the city is liable under § 1983 "only when the failure to train amounts to 'deliberate indifference' on behalf of the city toward its inhabitants." *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his

8

action." *Id.* at 752 (quoting *Board of the County Commissioners v. Brown*, 520 U.S. 397, 410 (1997)).  To demonstrate the requisite policy of deliberately indifferent inadequate training, evidence must "be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

      The plaintiff claims that the City of Richmond acted with deliberate indifference in failing to implement and train the police department staff in proper suspect-identifying techniques.  The city, according to the plaintiff, "has made a conscious decision not to implement safeguards in their suspect identification program to prevent arrest of the wrong individual." DE 18, at 5.  The officers typically use Mugshot Pro to identify a suspect and do not check operator's license photos as part of their procedure.  Officers are not required to double-check their identifications, which could be done, according to the plaintiff, through showing the alleged victim a photographic line-up.  The plaintiff asserts that the city's failure to follow these steps as part of its procedures for an investigation raises a factual dispute about whether the city acted with deliberate indifference.

      The plaintiff asserts that the City of Richmond should have developed a more stringent procedure for identifying suspects, but the plaintiff has failed to provide evidence of an inadequate training program.  The plaintiff did not offer evidence to show that the city failed to adequately train Richardson, or that the city maintained

9

any policy or custom allowing improper suspect-identification techniques. Therefore, the City of Richmond and Detective Richardson in his official capacity are entitled to summary judgment as a matter of law.

    2.  Rodney Richardson in his individual capacity

"In civil suits pursuant to 42 U.S.C. § 1983 for money damages, qualified immunity protects a public official from being sued as long as the official 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crockett v. Cumberland College*, 316 F.3d 571, 579 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The initial inquiry is whether there was a violation of the plaintiff's constitutional rights, which the court has already concluded is absent here. The defendants contend that even assuming Richardson violated the plaintiff's constitutional rights, qualified immunity protects him from individual liability.

The doctrine of qualified immunity shields Richardson from damages liability if it was objectively legally reasonable for him to believe that the warrant and subsequent arrest of the plaintiff were lawful. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable."); *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) ("Only where

the warrant application is so lacking in indicia of probable cause as to render belief in its existence unreasonable, will the shield of immunity be lost"). Richardson is immune as long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The plaintiff argues that Richardson did not have probable cause for obtaining the warrant and that he is not entitled to qualified immunity. According to the plaintiff, Richardson's mistake in failing to identify the correct suspect was not reasonable. The plaintiff asserts that she was incorrectly arrested and detained because Richardson did not take the necessary steps to ensure that he had identified the correct suspect before obtaining the warrant for her arrest. Richardson did not go to the jail or pull any operator's license photos, and he did not show the Redi Mart manager or Judy Clark any photo lineups. The plaintiff states that Richardson's failure to realize that the woman in the video was not Debra Wren was unreasonable considering that her attorney knew they were not the same person as soon as she watched the video.

Detective Richardson acted based on a reasonable belief that there was probable cause for the warrant. The victim identified the person who participated in the theft of her credit card as "Debra Wren," and the person fraudulently using the victim's credit card in the surveillance video looked similar to a previous

11

booking photo of the plaintiff. The facts and the details of Richardson's investigation all support a finding that he reasonably believed there was probable cause to arrest the plaintiff. Additionally, Detective Richardson's actions, including obtaining a warrant for Debra Wren's arrest, were supported by probable cause as discussed above. Therefore, Detective Richardson is not liable for § 1983 damages because there was no constitutional violation, and, alternatively, he is entitled to qualified immunity as a matter of law.

**B. State Law Claims**

The plaintiff also brought state law claims against the defendants for false imprisonment, malicious prosecution, invasion of privacy, negligent supervision, and slander per se. In the plaintiff's response to the motion for summary judgment she did not respond with facts to support her state law claims and she did not address the defendants' assertions that they are entitled to judgment as a matter of law. The plaintiff having not presented proof on the state law claims, the defendant's motion for summary judgment on those claims will be granted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (stating that to defeat summary judgment the nonmoving party must come forward with specific facts showing there is a genuine issue for trial).

**IV. Conclusion**

Accordingly,

    **IT IS ORDERED** that the defendants' motion for summary judgment (DE 15)

is **GRANTED**.

**IT IS FURTHER ORDERED** that the pretrial conference scheduled for May 30, 2008, at 9:30 a.m., and the trial scheduled for June 30, 2008, are **CANCELLED**.

Signed on  May 22, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY

13